UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:08 CR 513 RWS |
| | ) DDN |
| LATOYA HARDY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Hearings were held on January 22 and February 10, 2009.

Pending before the court are (1) the oral motion by the government for a determination by the court of the admissibility or not of the arguably suppressible evidence (Doc. 15); and (2) the motions of defendant Latoya Hardy (a) to suppress evidence (Doc. 19) and (b) to compel discovery (Doc. 25).

Defendant Hardy is charged by indictment with making a false statement on February 2, 2006, on a Free Application for Federal Student Aid form presented to Vatterott College, in which she stated that she would have a high school diploma or a GED before she beginning would begin the 2005-06 school year (Count 1); and with converting funds of the United States Department of Education on February 2, 2006 (Count 2).

**PRETRIAL DISCOVERY**

Identities of government witnesses

In her motion to compel discovery, defendant complained that the government had not responded to her first and second requests for discovery. Defendant also argues that the information the government has provided is sparse and that relevant information has been redacted.

Defendant argues specifically that the identities of certain knowledgeable people, some of whom may be called as government

witnesses, have been redacted from a report produced by the government to the defendant. Defendant argues she is entitled to the names and pertinent information about these prospective witnesses. See Doc. 25, Ex. 1.

The record indicates that defendant has received a substantial amount of relevant information about the government's case from the government. From the prosecution referral report from Agent John Woolley, dated April 17, 2008, provided to the defendant, defendant was informed that the government has evidence that Robert Marshall sold GED certificates to students at Vatterott College, including defendant, through representatives, including Tracy Mcgregory.[1] The report lists the names of 9 students who purportedly "are attributed to Hardy based on the evidence seized during the search of Marshall's home." However, the copy of the report provided to the defendant has the names of the 9 students blacked out, with the initials of the students handwritten in the margin. The report also lists amounts of loss attributed to each student, with a stated total of $52,188.00. Id. See also Doc. 32 at 2.

Defendant argues that the government has indicated that it might use the redacted information at trial under Federal Rule of Evidence 404(b) or at a sentencing hearing. Because disclosure of information relevant to sentencing is dealt with in Federal Rule of Criminal Procedure 32, which proceeding is not relevant at this time, the undersigned will consider the pending motion only in its pretrial posture.

The United States must comply with the requirements of pretrial disclosure of information set forth in Federal Rule of Criminal Procedure 16(a). Rule 16(a) does not require the government generally to disclose to the defendant the identities of its trial witnesses. Although the court has the authority and discretion to order the government to disclose the identities of its trial witnesses before trial, the defendant has no right to such information under Rule 16(a). Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("It does not follow

---

[1] The report identifies defendant Hardy as a "Marshall's rep" and her "[i]ndividual loss amount: $3,221.00."

from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."); <u>United States v. DeCoteau</u>, 186 F.3d 1008, 1010 n.2 (8th Cir. 1999); <u>United States v. White</u>, 750 F.2d 726, 728 (8th Cir. 1984); <u>United States v. Pelton</u>, 578 F.2d 701, 708 (8th Cir. 1978).

At this pretrial point of the proceedings the court must decide what prejudice would be suffered by the government by the pretrial disclosure of the names of the students listed on the agent's report and, conversely, what prejudice there would be to the defendant by the lack of this information. The government has not described any prejudice to it by the pretrial disclosure of this information.[2] The defendant's description of prejudice is general. Defendant argues only that she needs the identities of the witnesses to adequately investigate her case and defense counsel argues he needs this information to adequately advise defendant about her case. In this respect, the undersigned notes that the indictment charges defendant only with falsely stating she had a high school diploma or a GED before she began the 2005-06 school year (Count 1), and with converting $3,221.00 of government money (Count 2).

Upon this record, the undersigned believes that disclosure on the Wednesday before trial of the name(s) of any student(s) on the agent's report, whom the government intends then to call to testify in its case-in-chief at trial will adequately protect the defendant's due process interests.

<u>Brady information</u>

Further, defendant seeks production of the statements made by Robert Marshall, assertedly defendant's principal, who proffered information to the government which led to the prosecution of defendant. Defendant seeks the production of Marshall's statements under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Under <u>Brady</u>, the government must disclose

---

[2]There has been no intimation that disclosure will lead to intimidation or harassment of government witnesses. <u>United States v. Barnes</u>, 486 F.2d 776, 777 (8th Cir. 1973).

-3-

to the defense information or evidence that is favorable to the defendant when such evidence is material to the defendant's guilt, impeachment, or punishment. Brady, 373 U.S. at 87; see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

The government has responded that it has no Brady material to disclose to the defendant and that it will disclose to the defense on the Friday before trial its Jencks Act statements of government witnesses and the statement of Robert Marshall. Such is a sufficient response to the demand for production.

## MOTION TO SUPPRESS

Defendant Hardy has moved to suppress as government evidence two of her statements. The first she alleges was provided to government agents on May 15, 2006, and the second on July 12, 2006.

### The May 15, 2006 statement

In her motion, defendant describes the May 15, 2006 statement as being given to "Gene Hart, a private investigator, working on behalf of Vatterott College and acting as a government agent on behalf of the United States Department of Education." Doc. 19 at 1.

In its response to the motion, the government has proffered the following facts:

> 1. The defendant voluntarily participated in an interview conducted by an investigator hired by Vatterott College for the benefit of Vatterott. . . . [T]he investigator was not acting as a government agent. . . .
>
> 2. In addition, the defendant was not detained nor did the circumstances of the interview give the appearance of a custodial interview. First, the investigator identified himself as working for a private organization. Second, the defendant voluntarily appeared for the interview. Third, defendant signed a statement under penalty of perjury that she was giving the statement of her own free will and that she was not promised or threatened with anything in connection with her statement.

Doc. 20 at 1-2. The written statement signed by defendant is in the record at Doc. 24, Exhibit 2. Defendant has not proffered information or evidence to the contrary of the government's proffer.

At the February 10, 2009 hearing, the United States did not offer any evidence regarding the May 15, 2006 statement.

### The July 12, 2006 statement

Evidence was adduced regarding the July 12, 2006 statement during the hearing held on February 1. The undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. During 2006, Special Agent Zachary Howard, of the United States Department of Education Office of the Inspector General, investigated defendant Latoya Hardy, Robert Marshall, and others, and that investigation led to the indictment in this action. Before he interviewed defendant Hardy, Agent Howard studied the contents of the statement Hardy had given the investigator hired by Vatterott College on May 15, 2006.

2. On July 12, 2006, Agent Howard interviewed defendant Hardy by telephone, he from an office at Vatterott College and she, he believed, being at her residence. Agent Howard dialed Hardy's telephone number at approximately 10:30 a.m. and she answered the phone.

3. In the interview, Agent Howard told Hardy about his investigation and they discussed her admission to Vatterott College. She stated to him that she had submitted a valid GED document to Vatterott College. She told him that she had already given Vatterott a statement and she told him that she did not want to speak with him any more. Defendant Hardy then ended this conversation.

4. At no time in the telephone conversation did Agent Howard tell defendant that she was a target or a suspect of his investigation. At this time, the agent's investigation was in its early stages, no formal criminal charges had been filed, and he did not know enough about her involvement to believe that she was more than a witness. During that week, Agent Howard had other interviews of students scheduled.

5. At no time during the telephone conversation did Agent Howard advise defendant of her <u>Miranda</u> rights, he never told her that she did

not have to speak with him, and he never told her of any consequences that might come from her statements to him.

6.   The telephone interview of Agent Howard with defendant Hardy was overheard by Agent Jaclyn Meyer and the interview was not audio recorded.[3]  The telephone interview lasted approximately 20 minutes, until approximately 10:50 a.m.

## DISCUSSION

Defendant argues with respect to both statements that she reasonably believed she was in custody and subjected to questioning. She further argues that she was not advised of her Miranda rights, and was subjected to threat and coercion when she gave the statements. She also argues that the July 12, 2006 statement was acquired as a result of the unconstitutional acquisition of the earlier statement.

### May 15, 2006 statement

The information[4] before the court regarding the May 15, 2006 statements of the defendant, both oral and written, indicate that defendant gave the statements to a private investigator hired by Vatterott College apparently to investigate allegations of wrongdoing in connection with students receiving student aid.  Defendant argues that the actions of an otherwise private investigator can implicate constitutional protections, if the investigator is acting as a government agent.  Cf. United States v. Huber, 404 F.3d 1047, 1053-54 (8th Cir. 2005)(regarding Fourth Amendment rights).

Defendant's arguments implicate the Fifth Amendment's proscription of the government offering into evidence an involuntary statement from a criminal defendant, see Chavez v. Martinez, 538 U.S. 760, 770 (2003), or the government offering into evidence a statement acquired from a

---

[3]Defendant Hardy's statements to these agents were documented in the agents' one-page report found in the record at Doc. 24, Exhibit 1.

[4]Only non-testimonial information about the May 15, 2006 statements was provided to the court.

-6-

defendant during custodial interrogation without the defendant having been advised of her constitutional rights to remain silent and to counsel. Miranda v. Arizona, 384 U.S. 436, 444 (1966).

The information provided to the court by the government does not satisfy its burden to establish the voluntariness of the May 15, 2006 statement to the investigator or that the statement was not given under custodial circumstances. It is true that the defendant did not offer any evidence in support of her motion to suppress this statement. However, it is the government's burden to establish the admissibility, including voluntariness, of the subject statement. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The record before the undersigned is insufficient to establish whether the statement is admissible or not.

The government argues that the May 15, 2006 statement would not be offered into evidence in its case-in-chief, but only used to impeach the testimony of the defendant, if she takes the stand and testifies to the contrary. This argument is without merit.

Statements made in violation of Miranda generally are inadmissible in the prosecution's case-in-chief. Miranda, 384 U.S. at 444. These same statements, however, may still be used for impeachment purposes as long as the statements were voluntary. Harris v. New York, 401 U.S. 222, 226 (1971)("It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, *provided of course that the trustworthiness of the evidence satisfies legal standards*)(italics added); United States v. Baftiri, 263 F.3d 856, 857 (8th Cir. 2001); United States v. Louis, 157 F. App'x 165, 169 (11th Cir. 2005) (per curiam).

The government bears the burden of proving a statement was voluntary by a preponderance of the evidence. Louis, 157 F. App'x at 169; see also United States v. Lenegan, No. 07 CR 689-04, 2008 WL 4058715, at *5 (E.D. Pa. Aug. 22, 2008) (admitting defendant's statements for impeachment purposes where the government met its burden of showing the statements were voluntary). Again, the government has not met its burden of proving this statement was voluntarily given.

For this reason, the motion to suppress the statement from May 15,

2006, should be sustained, unless the government establishes at trial that the subject statements were voluntary.


### July 12, 2006 telephone statements

To safeguard an individual's Fifth Amendment rights, a suspect in custody must be warned before being interrogated that he has the rights to remain silent and to counsel. <u>Miranda</u>, 384 U.S. at 444. The safeguards described in <u>Miranda</u> only apply when a suspect is in custody. <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977) (per curiam). Statements made after a knowing and voluntary waiver of <u>Miranda</u> rights are admissible unless there were earlier, unwarned statements resulting from coercion or a calculated effort to undermine the suspect's free will. <u>United States v. Briones</u>, 390 F.3d 610, 614 (8th Cir. 2004). The simple fact that an investigation has focused on a particular suspect does not implicate <u>Miranda</u> if the settings are noncustodial. <u>Minnesota v. Murphy</u>, 465 U.S. 420, 431 (1984).

An individual is in custody if she has been formally arrested or if her freedom of movement has been restricted to a degree associated with a formal arrest. <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983). In determining the question of custody, the court first looks to the circumstances surrounding the interrogation. <u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995). Given those circumstances, the court then asks whether a reasonable person would have felt at liberty to terminate the interrogation and leave. <u>Id.</u> The critical inquiry centers on whether the person's freedom to depart was restricted in any way. <u>Mathiason</u>, 429 U.S. at 495; <u>United States v. LeBrun</u>, 363 F.3d 715, 720 (8th Cir. 2004) (en banc). In making this inquiry, the court looks to the totality of the circumstances from an objective viewpoint, and not the subjective views of either the suspect or the officers. <u>Stansbury v. California</u>, 511 U.S. 318, 322-23 (1994); <u>LeBrun</u>, 363 F.3d at 720.

Hardy was not in custody when she made statements on July 12, 2006. That morning, Agent Howard interviewed Hardy by telephone from an office

at Vatterott College.  Thus, there was no physical law-enforcement presence anywhere near Hardy at the time of questioning.  As a result, Hardy's movement was not restrained in any way.  In fact, she felt free to terminate the conversation with Agent Howard roughly twenty minutes after the interview had begun.  There is no evidence the questioning was police-dominated, that Agent Howard employed deceptive or strong-arm tactics, or that Hardy was ever told she could be arrested.  Hardy was not restrained as though she were under formal arrest during the interview on July 12, 2006.  Since Hardy was not in custody, the requirement that she be advised of her Miranda rights did not attach during this interview, and her statements may be used against her at trial.

Hardy argues that her July 12, 2006 statement was acquired as a result of the unconstitutional acquisition of the earlier statement.  The Supreme Court has disapproved of a two-step interrogation process, in which an initial interrogation proceeds without Miranda warnings, produces an inadmissible confession, and then is followed by mid-stream Miranda warnings and a second round of questions intended to elicit a similar confession.  See Missouri v. Seibert, 542 U.S. 600, 604 (2004).  In Seibert, the Supreme Court identified five factors to help determine the admissibility of a confession produced from a two-step interrogation process.  United States v. Gonzalez-Lauzan, 437 F.3d 1128, 1135 (11th Cir. 2006).  These five factors look to:

> (1) the completeness and detail of the questions and answers in the first round of interrogation, (2) the overlapping content of the two statements, (3) the timing and setting of the first and the second, (4) the continuity of police personnel, and (5) the degree to which the interrogator's questions treated the second round as continuous with the first.

Id.

On the other hand, an initial Miranda violation does not necessarily taint all future police questioning.  See Oregon v. Elstad, 470 U.S. 298, 314 (1985).

> [A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion.  A subsequent administration of Miranda

> warnings to a suspect who has given a voluntary but unwarned
> statement ordinarily should suffice to remove the conditions
> that precluded admission of the earlier statement.

Id. In Elstad, the Supreme Court rejected the idea that any short, earlier admission obtained in arguably innocent neglect of Miranda determined the character of all later, warned confessions. Seibert, 542 U.S. at 615.

In this case, no Miranda warnings were necessary for the non-custodial questioning on July 12, 2006. In addition, the five factors identified in Seibert weigh against finding the July 12 interview an extension of the May 15 interview. Nearly two months separated these two interviews. See United States v. Brisbane, 63 M.J. 106, 115 (C.A.A.F. 2006) (finding Seibert did not apply where the two interviews occurred almost six weeks apart). In addition, a private investigator conducted the first interview, while an agent for the United States Department of Education conducted the second. The interviews also occurred in different locations, and there is no evidence Agent Howard employed any improper tactics in his telephone interview. See United States v. Walker, 518 F.3d 983, 985 (8th Cir. 2008) (finding Elstad and not Seibert applied where the second statement was not the result of improper tactics and "the two questioning sessions were separated by time and location. . . ."). In short, the July 12 telephone interview did not represent a calculated effort to undermine the Miranda safeguards. See Seibert, 542 U.S. at 622 (Kennedy, J., concurring); Walker, 518 F.3d at 985.

The motion to suppress the statements from July 12, 2006, should be denied.

For these reasons,

**IT IS HEREBY ORDERED** that the oral motion by the government for a determination by the court of the admissibility or not of the arguably suppressible evidence (Doc. 15) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of defendant Latoya Hardy to compel discovery (Doc. 25) is sustained only in that the government shall disclose to the defendant on the Wednesday before trial the name(s) of any student(s) listed on the prosecution referral report of

Agent Woolly, dated April 17, 2008, whom the government intends to call as a witness in its case-in-chief at trial.

**IT IS HEREBY RECOMMENDED** that the motion of defendant Hardy to suppress evidence (Doc. 19) be granted in part and denied in part. The motion to suppress the statement from May 15, 2006, should be sustained, while the motion to suppress the statements from July 12, 2006, should be denied.

The parties are advised that they have ten days to file written objections to this Order and Recommendation. The failure to file timely, written objections may waive the right to appeal issues of fact.

As directed by the District Judge, this matter is set for a jury trial on the docket commencing **May 4, 2009, at 9:00 a.m.**

          /S/ David D. Noce
    **UNITED STATES MAGISTRATE JUDGE**

Signed on March 9, 2009.